My name is David Boone. I represent Mr. Sasson on appeal. Thanks for the correction. I'm Sasson. Sasson, that's how he says his name. I actually defer to the debtor's pronunciation. The first point I'd like to make is that the record is clear that there was no opposition to our motion down at the trial court level. This was basically an unopposed motion to vacate the judgment in those enforcement proceedings that were going forward. Mr. Roberts and I, who was co-counsel at that time, we actually filed the motion. We actually opposed, called opposing counsel that we had served and asked if they were going to file an opposition. And they stated, no, it appears the motion is well taken. So the matter before Judge Grube appeared unopposed. I mean, it proceeded unopposed. So I would submit that some of the novel things that have been submitted here on appeal, such as waiver and the effect of some other actions that occurred, aren't really properly before this Court. I think, I know that this Court is frustrated that many creditor attorneys don't like to show up at trial at bankruptcy court, but they love to file appellate briefs. And I refer to one of the Court's decisions in one of my earlier cases, In re Lam, L-A-M is the last name, where there was no opposition until we got to the court of appeals. And then there was all kinds of briefing and new legal theories being presented. The bankruptcy judge denied your motion. Yes. But I think that the review should be on the record that was presented before that judge and that I shouldn't. Well, if you just take what the bankruptcy judge said. That's what I'd like to do. All right. And I think the proper focus is what actually happened in 1999. What we have here is a novel invention of some unspoken, unwritten record that Judge Groove recollects to try to save this non-appearing, unopposing creditor from his own error. And I refer to, it's very simple, Excerta Records 8, we refer to Judge Groove's decision, where he finds that the judgment, plaintiff's judgment against defendant is declared nondischargeable pursuant to Section 523A6 of the Bankruptcy Code. And there's a footnote. And it refers to the judgment was made and dated November 18, 1989 in the civil action. And then, so there's a very, very specific reference to a very specific judgment. Let me ask you this. Under 523A6, that was the basis for declaring the debt nondischargeable. Right. And as I understand it, the debt was ‑‑ A promissory note, Your Honor. Well, no. The debt here, as alleged in the complaint, was the activity that took place after the judgment was entered. That is, that Mr. Sassoon manipulated the funds from the sale of his property in such a way that it prevented the creditor ‑‑ Well ‑‑ The creditor from enforcing the judgment under California's enforcement of judgment laws. Therefore, the postjudgment conduct was the debt and the damages that flow from that debt was the value of the judgment. But that's not true. Well, that's what I understand. Well, just tell me. That's what I understand. No, that's the ‑‑ Okay. Why is that wrong? Then find some part of the record prior to 2002 which refers to that. And I refer you to the creditor's own trial brief. Excerpt of record. I was going through the ‑‑ No, no. Seriously. Judge, because we have to make this clear. Because the frustration in this case is there is case law in this circuit that's just being ignored. The BAP ignored its own decisions. Look at excerpt of record 42, page 1. The plan's judgment must be declared nondischargeable pursuant to 523A6. I mean, it's all over the pleadings. There's never any request for another judgment. And what you have down here in the lower court is a travesty. Well, let's back up a little bit, though. Counsel, I gather the only reason we're here is because the state court judgment, in fact, can't be executed on anymore. It's void, right? It expired. It expired. And isn't that the problem that we have with the dischargeability in money judgments and the reason that courts enter money judgments on dischargeability claims is that the state courts, you cannot perfect or renew a state court judgment during the pendency of a bankruptcy because of the automatic stay, right? No, Your Honor. That's completely wrong. Many courts have said that. So you don't renew the state court judgment. It expires, and then there's a nondischargeability, and it's worth nothing to the creditor because the state court judgment is void, expired, or whatever. So then judges enter a new money judgment. Now, here the claim is they did something more, and there was a finding of fraud, whatever, and therefore it converted into a damage judgment. And I understand your concern. It wasn't a fraud finding, Your Honor, and none of what you stated is applicable in this case. Right. But it's not unusual for bankruptcy courts to enter dischargeability judgments that also have attached to them a concomitant money judgment. It doesn't mean it's a double recovery. It's an expansion and an enforcement of the state court judgment. But that's not proper, Your Honor. The case law is clear. If there is no judgment, you're right. The court can modify it. Well, Kennedy says that. But, I mean, I think the implication from Kennedy is that you could do it even in a nonjudgment case because it supersedes the state court judgment. No. That just turns the Constitution, full faith and credit, and the rest of the U.S. Code on its head. You know, this is what I don't follow about your argument. You know, it would be if there were a judgment that was in contradiction to the state court judgment, one might say, well, that offends perhaps the full faith and credit. But here it's actually an attempt by the federal courts to effectuate the state court judgment. So I don't understand the full faith and credit argument. There's no conflict in having an additional judgment, I think, in federal court that says it's nondischargeable, here's your additional judgment, you're not going to get a double recovery, but we are giving full faith and effect to the state court judgment. So my rant is finished. Now you get to rant back. Okay, Your Honor, that's just against all the case law that we've cited. There can't be two judgments. There's full faith and credit. The state court made a judgment. It provided for a certain amount plus attorney's fees. Then Judge Bonney amended that judgment when the attorney's fees were determined, and that is the final judgment in this case. There's no two state court judgments. That's one of those silly red herrings that's argued only on appeal. Let's take a different example. Let's say it's a Chapter 11. State court judgment is modified by the Chapter 11 plan. Plan's confirmed, new federal judgment, right? It supersedes the state court judgment. I don't think there's any common basis, and I don't understand your argument, Your Honor. No, but you would agree that that's true. The state court judgment – I wouldn't agree, Your Honor. A Chapter 11 plan is – Let me ask you this. Do you think a bankruptcy court can modify a state court judgment? Your Honor, what I'm saying in this case, there's a prior existing state court judgment that hasn't expired, it wasn't up for renewal, and that what the judge was asked to do was make declaratory relief. And even though I believe he was in error on that, he simply made a declaratory judgment that the state court judgment was nondischargeable. I think – well, see, I don't know. He looks to me like he did something a little bit different. No, not in 1991. Well, if you go to the findings of fact and conclusions of law from the trial in 1991, it's – he just wasn't making a – he couldn't have made a finding. On this record, for the underlying debt, that there was fraud involved in the underlying debt giving rise to the state court judgment, he focused on – He never found fraud. He focused on the standard under 523A6 and focused on the conduct by the debtor in manipulating the funds from the sale of his assets and said you did that intentionally, you injured the creditor, and you prevented the creditor from collecting the judgment. And for that, the value of the debt, you're indebted to him for that, and the value of those damages is the value of the judgment. And he entered a judgment based on that. That just seems to me what he – I've been thinking about this. I've thought about this a lot. And I – initially, I kind of thought that you're – that all he did here was to simply declare the judgment nondischargeable. But that's all he did do, legally. Well, it seems to me what he's doing, if you read this carefully, it seems to me what he's doing is using the judgment as the value of the damages, the measure of damages for the harm that occurred after the judgment was entered. Now, I may be wrong on that, but let me ask you one other question. Okay. But let me take this another step, which is even if you assume that there may have been some lack of subject matter jurisdiction here, why is he – why does it avoid the judgment under 60b-4? Because all the bankruptcy court judgment was a declaratory judgment regarding the dischargeability of the State court judgment. And that's all that's said in the record. And to correct Your Honors, this is a 1989 judgment that didn't expire until 1999. This is a declaratory judgment in 1991. So there's none of these issues as to expiration. There was nothing in the original complaint, let alone the prayer, that would have spoken to getting a new Federal money judgment. And I have to remind Your Honors that debtors have no rights in these. They don't have the right to file a cross-complaint. They don't have a right to any serious discovery. They don't have a right to a jury by trial, no matter how many tomes talk about it. I've been an attorney for over 25 years, filed over 10,000 bankruptcy cases, and a jury trial in any of the cases I've known about. And so what we have is a very brief one-hour hearing, one-and-a-half hours, where the judge – this judge takes a dislike to this debtor and says the judgment's non-dischargeable. Now, let me tell you what would have happened if Mr. Sassoon had filed bankruptcy. This credit wouldn't have – before he bought this house, all the money would have gone to the IRS. Right. Well, I mean – But these are concerns that are – I appreciate you're adding to our background knowledge of the case. Okay. But realistically, as you sit down, if you talk – first, if the theory is, if the judge here found, rightly or wrongly, that it was a damage judgment and not a reaffirmation or a collateral money judgment, then your argument is different. It seems to me your central argument on that is that's not what happened. He did. But if it is what happened, does that change your argument? No. Well, then I still say he had no power to do that as a bankruptcy judge, and that's not what he did. Well, I know – In 1991 – So you're ignoring my question because I said I understand your argument that he didn't do that. I'm asking hypothetically if he did it, why do you think he'd lack the power to do that? He lacked the power because there's a pre-existing state court judgment that's But this is based on – And full faith and credit says that he has to honor that judgment. And he did. He found it to be non-dischargeable. Well, let me put it this way. Let's say that a bankruptcy court enters a judgment based on fraud that is entirely collateral – entirely different, excuse me, to the state court judgment. Bankruptcy court can do that. There's nothing that prevents that from occurring. If there's no state court judgment, Your Honor, they can – or even if there is, they could look behind it to find the facts of fraud. You're right. But this is not a fraud case. Well, okay. These are fraud allegations at any time. Your interpretation of bankruptcy courts seem to be a little bit at odds. And you may be right. But I just have very difficult time understanding your full faith and credit argument for this reason. If your argument is true, how would the bankruptcy court have the power to discharge a state court judgment in the first place? Because all your dischargeable unsecured debts are discharged. Because what you're saying is we're not going to give full faith and credit to this judgment. In fact, we're going to wipe it out. We're going to make it void. That's the way bankruptcy law works. So what you're saying is – you're saying at the onset, the bankruptcy courts have the power to say a state court judgment can be modified, rendered void, blown off the face of the earth. But if you bring it back, the bankruptcy court lacks the power to issue a collateral order affecting the state court judgment. To me, this makes no sense. But that's not true. I'm not saying that. They did exercise their bankruptcy power to declare the state court judgment non-dischargeable. There's an existing judgment. How is the federal judgment in any way in conflict with the state court judgment in this case? Because there's already a state court judgment. Right. There's nothing different about the federal judgment. What the bankruptcy court was doing was either giving a money damage equivalent award to that or giving effectuation of the state court judgment, one of the two. Now, if those judgments had been executed on, you'd say, well, wait a minute. You can't get a double recovery. You might have a different argument. But here, what's happening is that the bankruptcy court is simply saying, this debt's not dischargeable, and I'm going to enter a judgment to effectuate it. But that's not what Judge Grube did in 1991. He said the state court judgment is non-dischargeable. And a lot of things were done wrong by the creditor in this case. Let's assume he had a federal money judgment. He doesn't – you don't collect that in bankruptcy court. You have to go to the district court to get a writ issued, and you have to proceed on that collection grounds. I think that the facts – if you look at the facts in this case, the complaint to the creditor didn't ask for a new money judgment. And what Judge Grube did was simply give the creditor what he asked for on the one determination was that the state court judgment was non-dischargeable. That's the totality of the record until we get to 2002. And there's a tremendous amount of argument in 2002, well, no, what I was really doing, but there's no support for that in the 1991 proceeding. And there's no power for the bankruptcy court in 2002 to invent a record 11 years earlier just because he wants to get this debtor. That's where – that's the abuse of discretion, is to make a money judgment 11 years later. You've got about a little less than four minutes, so I want to give you time to reserve for a bubble. Let me ask you this. You guys have been at this a long time. I'm going to ask your co-counsel is, was this a case that would be assisted by the Ninth Circuit mediation? We tried it, Your Honor. And I agree with you. Both of the parties, I believe, are medical doctors. They were partners. Some swerved at one time. It doesn't – and it does not reflect on you one way or the other whether you wish to participate. But I guess your answer is we've been down that road and it's not going to be successful. We tried the Ninth Circuit's procedure and it was not successful. Certainly I support those kind of settlements, but we do have a very specific issue presented here before you, Your Honor. I would like to – just one final comment is to correct that this is not a fraud case. This is a case about a debtor taking proceeds from the sale of his home and buying another home, and the judge feeling that the State court restraining order to not dissipate assets was inherently violated. And I would submit that my debtor clients generally have State court orders. Their order of examination is served on them. By State law, there's a lien placed on your assets when you're served with that order of examination. We file bankruptcy and those liens are extinguished. Nobody is found non-dischargeable for filing bankruptcy after being served order examination. Thank you, Counselor. I reserve my two minutes, Your Honor. I see the two-minute warning here. Yeah. My name is Wayne Silver, and I represent the creditor in this case who is the plaintiff appellant, Dr. Norman Sokoloff. Could you raise your voice, please? I can. I'm sorry. When I started my oral argument and laid it out, I was going to talk about the record in this case and about the judgments that have been entered in State court. And based on the questions that were asked today, I still would like to do that because I think it's very important that the Court understand that the claim really was not liquidated when it was presented to Judge Grubb, even though there was – there were two prior State court judgments. And it's kind of interesting because I raised the issue. How can it not be liquidated when there's a judgment? Because the conduct that made the claim non-dischargeable had never been tried to the State court. Right. But in essence, what you are asking the bankruptcy court to do is to say the State court judgment, which would otherwise be discharged, should not be discharged because of the fraud. Right? Your Honor, I think – It doesn't make it into a – take a liquidated judgment and convert it into an unliquidated judgment, does it? Well, the judgment itself for the breach of the promissory note and the interest and the costs indeed was liquidated in the State court. But what I'm arguing is that Judge Grubb was free, if he wanted to, under the complaint that was filed, to find damages independent of the State court judgment from the conduct that occurred that was not in any way addressed in the State court lawsuit. It was completely different conduct where the debtor took a collectible judgment and turned it into an uncollectible judgment. But that type of – is that type of conduct actionable under California law? Could you have sued him under California law for that kind of conduct? I believe you could have, Your Honor. I believe you could have done it a couple of different ways. One, I think if they had known about the conduct, and I want to talk about that in a minute, they could have gone back into State court and they could have said to the State court judge who had issued the stay that the stay had been violated, it's a contempt. Well, no, that's contempt. But could they have sued him for damages? I see. I see. Okay. A cause of action. Yes. Let's assume there's no bankruptcy. And let's assume that there are fraudulent transfers, because that's what really happened. There were fraudulent transfers. So there could have been a fraudulent transfer complaint brought under State law saying you took all of your assets and basically made yourself judgment-proof. That's exactly what's under the U.F.C.A. And you can get damages for that. Oh, absolutely. You can avoid the transfer for one thing and bring the money back and go after the transferee. What is the evidence in the record that the transfer was fraudulent and that supports the money judgment theory? I'm sorry. I didn't quite hear that. I'm sorry. What is the evidence in the record before us that the transfer was fraudulent and that would support the bankruptcy court holding that this was essentially damages for tortious conduct? Your Honor, I think that the evidence in the record as to the nature of the transfers can be found in the findings and conclusions of Judge Groove's original adversary trial in 1991, where he finds, and this is on page 5, just give me one minute, page 25, through beginning of item 7, that in violation of the stay, the debtor dissipated assets violating the stay, and then he goes on and I believe, if you'll just, yes, he, in number 15 on page 26, he states the action produced harm because, excuse me, it's not number 26. While you're looking for that, my question really isn't so much about the findings because I know that that's what he found. I was asking more about the basis for the findings in the underlying record. Your Honor, I think the problem that we have in the underlying record is that all we have are the findings and conclusions. We don't have anything from the state court, from the adversary trial, so it's difficult to go back and try to recreate what the judge's findings and conclusions were based on. But as I'm reviewing them, I do recall either a finding of fact or a conclusion of law where he determines that the transfers of the assets renders an otherwise collectible judgment uncollectible in violation of the state court's stay. I'm just not putting my finger right on it at the moment, but I recall that he did make that finding. That was the reason for his 523A6 judgment, finding intentional conduct. The odd thing about that, though, the normal remedy in bankruptcy would have been to reverse the transfer. Yes. But that wouldn't have helped your client because presumably, I gather, there were insufficient assets to pay the judgment, right? Your Honor, I wasn't there in 1991 or in 1989. I really don't know. The record isn't really clear. But I believe that the assets would have been sufficient but for the transfers, which is one of the reasons why Judd Grube ruled as he did. So, in fact, I found it. On page 23 of the record, item 17, it says, quote, So the court did make that finding a fact. I don't know based on what evidence. We don't have that in the record. The judgment, the state court judgment, was entered within what proximity to the bankruptcy? The original state court judgment was entered in 1988. It's not in the record. And then it was finalized or there was some sort of an order. I'll talk about that in a minute. In 1989, in March, the bankruptcy was filed in May of 89. So the bankruptcy was filed about two months after the reconsideration was denied and the second judgment was entered. So the judgment, if other creditors had objected to it, could have been avoided under California, under bankruptcy law, because it came within 90 days of bankruptcy? Your Honor, I don't believe the judgment could have been avoided. The judgment would not have been a preference. If there had been a lien placed on assets, perhaps that would have been a preference and avoidable in the event the lien would not have been paid under Chapter 7. Under the facts of this case and this record, we can't know that. Well, that's the oddity, is that the court says the judgment would have been collected. But the fact is that it would not have been collected given the subsequent bankruptcy, correct? No, Your Honor. I disagree. Tell me why. If you file a Chapter 7 bankruptcy and have assets, the trustee would liquidate those assets and distribute them to the creditors. Yeah, but the judgment's not collected. It would have the same force as an unliquidated claim. In other words, to me, what it looked like, if you're saying we're going to rely on the distribution mechanism of bankruptcy, then what has to happen is the assets come back in the bankruptcy that were improperly transferred. That's distributed pro rata to the unsecured creditors, right? Yes. You agree with that? That's not the same thing as saying your judgment would have been collected. We don't know what the assets were. You could have got 7 cents on the dollar, 20 cents on the dollar, 100 cents on the dollar. Your Honor, I agree. When people talk about collecting a judgment, they're talking about, generally speaking, I find when judges refer to that, they're talking about someone taking a judgment, putting a lien on property, and getting it satisfied in state court. I see the court's point. I don't have a response because we don't have the bankruptcy schedules. We don't know what would have been objected to as far as other claims. I can't do a liquidation analysis. All I can do is look at the findings and conclusions where the judge group does find that absent the stay, it would have been a collectible judgment. So ---- If you'd renewed the judgment, would we be here today? That depends on whether or not the debtor would file the 60-B-4 motion. The debtor filed the 60-B-4 motion for reasons I assume that have to do with the renewal. Actually, I'm talking about the State court judgment. I don't know. Again, it depends on what the debtor would do. Had the State court judgment been renewed, which I think would have been a violation of the stay and also would have specifically gone against what Judge Groove ruled ---- Well, according to your colleague, the renewal wasn't up until long after the bankruptcy had ended. Is that right? 1991, yes. That is right, Your Honor. They could have renewed the State court judgment, I believe, after the bankruptcy had ended, except for Judge Groove's finding that the State court judgment was unenforceable. Judge Groove specifically found that the State court judgment, and he talks about that in the hearing that takes place in the debtor's motion to vacate, where he says the State court judgment is no longer collectible. It's unenforceable. So for all these long years, the assumption has been that the State court judgment effectively ---- it's odd. It's an odd ruling. He says almost like it's been discharged, but here there's this new judgment that we've got that's non-dischargeable. That's what I think Judge Groove was thinking about. So there was no ---- so after the 1991 trial and the dischargeability action, there was no attempt to collect the State court judgment in State court? That's what the record shows, Your Honor, yes. And it wasn't until 1996 that they began ---- that the creditor began efforts to collect the Federal judgment through process issued by the bankruptcy court? I'm not sure they waited until 96. Or 94, whenever. Yeah, I think it was sooner than that. And it was all done in the bankruptcy court. Right. All the collection efforts that I'm aware of that are in the record were in the bankruptcy court. At some point he filed a claim of exemption to ---- He did. He filed a claim of exemption. There was a hearing on the claim of exemption. There were findings on that claim. There was also a writ of execution issued. I believe there was an order for examination that took place. There was a wage garnishment that was eventually taken. And all that took place in the Federal bankruptcy court. Your Honors, I did want to talk very briefly about the two judgments. I think it's very important. Go ahead. State court judgments. We have the first judgment and we go back and we say in the opening brief we're told Sokolov was aware of Sasson's activities with respect to the dissipation of assets and didn't pursue a remedy. The argument being from the appellant, he slept on his rights. That's in the appellant's opening brief on page 6. And the support for that in the record is a letter that was sent by a former counsel from my client, and the letter says, and it's a finding, you don't have the letter. It's in the findings and conclusions. It says, By letter dated December 14th, 1988, Plaintiff's counsel advised Sasson's attorneys that any division of Sasson's assets and his wife's assets in the dissolution proceeding would constitute a violation of the State court's stay. And based on that in the record, the appellant, Sasson, contends that my client was aware of this dissipation of assets and slept on his rights. And I challenged that in my opening brief, and I said that was a misstatement of the record, because that's not what happened. In response to that, in the reply brief, what the Mr. Sasson says is that it seems reasonable to assume that the Court made those findings and considerations because there's a difference in the dollar amounts of the two judgments. And the second judgment is more, it's $20,000 more. And that $20,000 reflects the State court awarding some sort of sanction or some sort of damage to my client for the violation of the stay. And that can be found on the reply brief at page 7, lines 2 through 9. And what I want to explain to the Court today is that when you look at the two judgments, you get a kind of an interesting result. The first judgment is for $120,000, 100,000 principal, 20,000 interest. It's parsed into four parts, A, B, C, and D, and Part D says statutory costs to be determined. That judgment was entered on November 18, 1988. When you look at the second judgment, which is Excerpt 3 to the record, entered March 3, 1989, it's parsed exactly the same way, A, B, C, and D. And A and B and C are exactly the same as the first judgment. The only difference is in C, there's a little bit more interest that's added. But in D, statutory costs are awarded. And what's awarded are $1,000 and some change for costs and $25,000 of attorney's fees. There is absolutely nothing in the record, there's nothing in that fact pattern that would in any way support that the State court had any knowledge or did anything at all whatsoever with respect to Mr. Sasson's dissipation of his assets. And what's really interesting is that if you look at Judge Groove's judgment after trial, it references the State court judgment, and the appellant has talked about that, but it references a judgment with a completely wrong date and the wrong amount, and it's difficult to reconcile. I sat last night again and tried to do it, and I couldn't do it. On page 32 of the record is the – actually, it's on page 31. It's excerpt number 8, is the judgment after trial that was entered by Judge Groove. And in footnote 1, he references the judgment that was entered on November 18, 1989. There was no judgment on November 18, 1989. He had two choices. November 18, 1988 or March 3, 1989. It's interesting. I don't quite – it might be a typo. We'll go with the fact that it was. There are a lot of peculiar things about this case. Yes. But then the dollar amount doesn't work, because he says, well, he's entitled to $148,142.46, which includes all postpetition interest accruing on the judgment as of March 25, 1991. I've done the math. It doesn't work. It just doesn't work. And that led me to think one other thing, because I've also thought a lot about this case. It's a very interesting – it's got some very interesting issues. What if Judge Groove awarded his own attorney's fees? What if Judge Groove found that it was a fully secured case, the creditor was – there was promissory note that had a reasonable attorney fee clause, and he wanted to award his own attorney's fees? Couldn't he have issued – didn't he have jurisdiction to issue a judgment that included attorney's fees? Doesn't that happen all the time? So the argument that, well, you can't have two judgments, I think it's out the window. I think it's a very specious argument, because bankruptcy courts award judgments all the time. I gather, as I recall from looking at that judgment, that Mr. Sokoloff's counsel prepared and submitted the judgment. Give me one second, and I will confirm that. That is correct, Your Honor. So, there you go. Not the best form of judgment I've ever seen. And apparently – you can't tell this. I have no idea. But there doesn't appear to be any objections to it, at least not in this excerpt of record. No, Your Honor. And, you know, it's interesting, because one of the cases that was relied on by Mr. Sesson in front of the bankruptcy court was the Smith case. It was a BAP opinion. There were two Smith cases. And in the BAP case, the first one, very interesting, that the debtor vehemently objected to the conclusion of the money judgment through two motions for reconsideration and on appeal, whereas here, you never hear about it. You don't hear about it for 10 or 11 years, and then suddenly the debtor wakes up and says, aha, gee, I've got this really interesting argument. And if you look at the jurisdictional scheme and how you raise it in a 60B4 motion, I think what happens is you say, well, does the Court have jurisdiction in general? The answer is yes. Everybody knows the Court has jurisdiction. It's a nondiscriminability case. Kennedy says that. Holtzman says that. It's no problem. Then you say, well, okay, does the Court have the power to issue a money judgment? Again, the answer is yes. The Court has the power to issue a money judgment. Okay? So now we come to the part about, well, what about the State court judgment? Does the existence of the State court judgment, which I've hidden in my back pocket and haven't talked to anybody about, does that State court judgment hidden in my back Or do I have to take that hidden judgment out and say res judicata? Do I have the affirmative duty under Rule 8 to say to the Court, I plead the defense of res judicata? I think the answer is yes. I briefed it. I'm not going to repeat what I said in my brief. But I think that's the fundamental problem with the appellant's argument. It's not a jurisdictional issue. It's an affirmative defense of res judicata. That's why the BAP disagreed with Heckert. It's a very important point. Whether you look at it from 1738 perspective under jurisdiction or you look at it as a collateral attack, it's the same argument. It's just both sides of the same coin. You still have the problem of, wait a second, the Court has jurisdiction. No one's going to argue that it's a void judgment because the Court couldn't issue a money judgment. The problem is the full faith and credit clause, and to get there, you need to raise the defense of res judicata. I guess you could say, I guess your argument is that this is nothing more than an erroneous judgment. It's not void in the due process sense. Yes. Or jurisdictional sense. I'm not sure. At best, it's an erroneous judgment. At best. Yes, Your Honor. I think, and we know erroneous judgments are not void. So yes, giving all, you know, the points over to the appellant's side, we'll call it an erroneous judgment. I still don't think it's void under 60b-4. Unless the Court has any other questions, I think I'll conclude. Thank you, counsel. Thank you very much, Your Honor. I take it you share your colleagues' view that mediation is of no point at this stage? Your Honor, we tried to mediate, and I think the problem is we failed. That's okay. I don't want to know about the problems. It's too late. No, I'm sure the two of you could settle this case. We could. Yes. Thank you for your candor on that question, both of you. Your Honor, I'll be brief. I do have one comment about the jurisdiction of the Bankruptcy Court, and that is that they are very limited in the grant that's given to the Bankruptcy Court. And we addressed that in our brief, starting on page 11, when we discussed the Kennedy case in Ray Kennedy. It was the Ninth Circuit Court of Appeals case, saying that, you know, if it's an unliquidated claim, then you can go ahead and come up with a money amount. But otherwise, the grant of your power under 157B1 is to determine the chargeability of this. Well, I didn't see Kennedy's going so far as to incorporate the otherwise language. I'm sorry, Your Honor. Well, Kennedy said you could certainly issue a judgment, and it happened to involve an unliquidated amount. I don't read Kennedy that broadly. Doesn't your case boil down to this? I mean, there are a lot of interesting turns to it. But it seems to me it boils down to this. You've got a 60B motion, and the only way it works is if the Bankruptcy Court lacks jurisdiction. So we have the only issue that really is in front of us, although there are interesting collateral issues, is whether the Bankruptcy Court had the power to enter the judgment in the first instance, right? Well, no, Your Honor. I think Judge Graber's comments are on point, and I think I now understand what really is confusing the Court, is that there's this State court judgment and there's some confusion on part of the justices that somehow Mr. Sassoon did things after the judgment that would give rise to Judge Grube having some factual basis for making a subsequent Federal money judgment. That's not the truth in this case. And I will briefly, I can briefly point out to you on the record. Right. But he could not have issued a non-dischargeability order unless there was something other than. Well, bankruptcy judges can do whatever they want, Your Honor, whether they're right or not. No, but under the statute, you know what I'm talking about. Under the statute, unless he found some fraud or some other abusive process, he's not going to issue, he can't issue an order of non-dischargeability. If he did, you could have appealed that. Your time has long passed from arguing about that. Well, I understand, Your Honor, and it should have been appealed. But what I want to point out to the court is that all this conduct that's been referred to in this record that gets invented in 2002 occurred prior to entry of the State court judgment. He bought his house. These acts all occurred and the deal closed in December 1988. Judge Bonney doesn't issue the final judgment in the State court action until March 1989. So all Judge Grube was doing was, as the case is discussed, looking behind the facts on the entry of the judgment, and he found they were non-dischargeable. There's no subsequent acts to the entry of the State court judgment. Nothing happens. So Judge Grube has no authority to invent cases. Well, except that we don't have a free license to go back and look at all judgments that were entered 10 years ago, 15 years ago, and see whether the court was correct or not. You may be right. He may have been entirely incorrect in entering that judgment. But on a 60B motion, the fact that you may be right, he may have entered the judgment error, you may have affirmative defenses that he should have been asserted, that he should have known about, really doesn't matter, does it? The only question is, did he have jurisdiction? Was the judgment void? And I understand your argument to that on that issue, and I appreciate it. Okay. Well, Your Honor, what I'm saying is, I'm not saying he was not attacking the judgment. Let me make it clear. I'm not attacking what Judge Grube did in 1991. I think it was probably an error. It should have been challenged. But I'm saying what he did, very simply, was find the judgment non-dischargeability. But the judgment itself has a monetary component. But that's what I'm – okay. I guess that's what I'm saying is that that's where he violated full faith and credit. Yes. Well, that's – even that would have to be an affirmative defense that would have asserted at the time. It seems to me that under 6dB, that the only way you get to – I mean, I think it boils down to whether the court had jurisdiction. Is that judgment void or not? Right? The judgment – if you want to – Your argument is that it's void because, I mean, you claim that full faith and credit gets you there, but you're also arguing bankruptcy court jurisdiction and so forth. That's your – that's the central part of – you're shaking your head. I don't understand. What I'm saying, Your Honor, is Judge Grube did not issue a money judgment. But he said – He made a finding of non-dischargeability of the state court judgment. He did that. And then he entered a judgment that had a monetary amount. And – Well, we know later that he issued – they allowed writs of execution to issue on that judgment. Well, that – I don't think that was Judge Grube. I think that's just some law clerk in the bankruptcy court standing. Well, there was a determination when he filed the claim of exemption. There was. I understand. But – He thought it was a money judgment then. But what Judge Grube was doing in 91 by putting the money amount in was within his jurisdiction. And it was in line with Kennedy. What he's empowered to do is say that this amount, the promissory note amount, is non-dischargeable. And then he said, you don't get the attorney's fees. And that's what a bankruptcy judge can do. He can look at the state court judgment. He looked behind the judgment to the prior conduct, not subsequent conduct. And he said, the judgment for the note is non-dischargeable. You don't get the attorney's fees. There's my judgment declaratory relief, both – You know, you're missing paragraph three. And it's the money amount. But you're missing paragraph three. Paragraph two is what you say. Plaintiff's judgment against the defendant is declared non-dischargeable. So far, so good. Paragraph three, plaintiff is entitled to recover from the defendant the sum of blank, blank, blank. It's a monetary judgment. There's just no way around it. But, Your Honor, you've got to read that with what he found. I mean, are you saying that even though it wasn't in the complaint, that the debtor in a dischargeability action has very, very limited rights? And that's the argument I think you're making. And it seems to me on the – we take the judgments as we see them. It's a – it looks to me like it's a monetary judgment and a judgment of non-dischargeability. If it were just only a judgment of non-dischargeability, it would stop at paragraph two. But, Your Honor – And it's not uncommon, in my experience, for a separate monetary judgment to be included with that. Now – In bankruptcy court? Yes. But that's – your argument is that that's beyond the bankruptcy court's power. That's an issue for us. But if we take the judgment on its face, to reach your conclusion, we have to really go peel behind the judgment, which I don't think we can do on a 60B. But all you have to do is look at the complaint. Are you saying, the judge group, that the one piece of paper in this record that you might be able to read as a monetary judgment is the reference to monetary amounts? That's what – that's indistinguishable from any other money judgment. When you recover X amount and it's a judgment, that's – But the only – I mean, I've seen dischargeability orders that say, it's just dischargeable. You have to. Period. End of sentence. No monetary amount reference. Well, Judge, but the only thing that they sued for, what they prayed for, was non-dischargeability of the State court judgment. And that's what I submit, is if you just look at what happened, they got what they wanted. They got it non-dischargeable. And in 2002 is the first mention that, hey, maybe this is a separate money judgment. And that's where I think that the bankruptcy court didn't have the right to do that. That's not in the grant of powers to bankruptcy court. They violated full faith and credit. There was no facts subsequent to the State court judgment that would have given Judge Grube the basis to conjure up a new judgment. And it's simply wrong. Thanks for your argument. For the additional time. I appreciate it. Yes. Well, and thank you for indulging my occasional diversionary interest in bankruptcy law. So I appreciate your coming back. And I hope we take these things and reflect on them. So just because I get animated in argument doesn't mean I necessarily disagree. This is a very strange case, Your Honor. Thank you. Thank you, Your Honor. Thank you, sir. It will be submitted. We'll proceed to the last case on the oral argument calendar, which is computerized store versus compact.
judges: Thomas, Graber, Paez